FILED

2014 Sep-08  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **SONYA HUNTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 4:13-CV-0391-SLB** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Sonya Hunter brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ["DIB"]. (Doc. 1.)[1] She has filed a Motion to Remand Pursuant to Sentence 6 and attached a decision, dated January 17, 2014, awarding her disability. (Doc. 13; doc. 13-1.) Upon review of the record and the relevant law, the court is of the opinion that Ms. Hunter's Motion to Remand Pursuant to Sentence 6, (doc. 13), is due to be denied, and the Commissioner's decision is due to be affirmed.

## I.  <u>PROCEDURAL HISTORY</u>

Plaintiff initially filed an application for DIB on May 4, 2010, alleging a disability

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

onset date of May 3, 2009, (R. 150),[2] due to "nerve damage from 2 prior cervical surgeries fusion, severe nerve pain, fibromyalgia, depression, anxiety, thyroid condition, and sciatica with nerve pain in leg," (R. 153). After the Social Security Administration ["SSA"] denied her application, she requested a hearing before an Administrative Law Judge ["ALJ"], which was held on December 21, 2011. (R. 10.)  After the hearing, the ALJ found that plaintiff did not have an impairment or a combination of impairments listed in, or medically equivalent to one listed in, the Listing of Impairments. (R. 13); *see* 20 C.F.R. § 404.1520(d). The ALJ also found that plaintiff retained the residual functional capacity to perform light work with some specific restrictions, (R. 16), and that there are jobs in the national economy that would accommodate plaintiff's limitations, (R. 27). In light of these findings, the ALJ denied plaintiff's request for a period of disability and DIB on February 10, 2012. (R. 28-29.)

Plaintiff then requested the Appeals Council to review the ALJ's decision. (R. 1.) The Appeals Council found no reason under its rules to review the ALJ's decision, and it denied her request for review. (*Id*.) Therefore, the ALJ's decision is the final decision of the Commissioner. (*Id*.)

Following denial of review by the Appeals Council, Ms. Hunter filed an appeal in this court. (Doc. 1.) She requests "relief or judgment as the [c]ourt may deem just and equitable." (*Id*. at 2.) After filing her appeal, Ms. Hunter filed a Motion to Remand

---

[2]Reference to a record number, ["R. ___"], refers to the page number in the entire record provided to the court.

Pursuant to Sentence 6 of 42 U.S.C. § 405(g). (Doc. 13.)

## II.  <u>STANDARD OF REVIEW</u>

### A. MOTION TO REMAND

"Section 405(g) permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands,' each of which remedies a separate problem." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 42 U.S.C. § 405(g)). "The sixth sentence of section 405(g) provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"  *Ingram*, 496 F.3d at 1261 (quoting 42 U.S.C. § 405(g)). "[A] sentence six remand is appropriate only when the claimant submits evidence for the first time to the district court that might have changed the outcome of the administrative proceeding." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013) (citing *Ingram*, 496 F.3d at 1267-68). "New evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.* at 902-903 (citing *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)).

**B. APPEAL OF THE COMMISSIONER'S DECISION**

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

The court reviews the Commissioner's conclusions of law de novo. *Cornelius,* 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's]

conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and/or DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* § 416(i)(1); § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1.  Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the

---

[3] 20 C.F.R. § 404.1572 and § 416.972 define "substantial gainful activity":
(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience.  20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 3, 2009. (R. 12.)

## 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); §

---

(c)  *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

1382c(a)(3)(D).  The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).  "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); § 416.921(a).  A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments.  *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the following severe impairments: "status post two cervical surgeries performed in 2006, with re-injury in 2009; degenerative disc disease of lumbar spine; obesity; fibromyalgia; depression; and anxiety." (R. 12.) The ALJ also found that her alleged headaches and thyroid conditions were not severe impairments.  (R. 12-13.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d); § 416.920(d).  The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing.  (R. 13.) The ALJ found that plaintiff's impairments did not meet or equal musculoskeletal listing 1.04 because "[n]o medical tests have shown nerve root compression, spinal arachnoiditis or lumbar spinal stenosis." (R.14.) The ALJ also found that plaintiff's mental impairments did not meet or equal the criteria in listings 12.04 or 12.06 because they did not cause "at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation," nor did they cause "repeated episodes of decompensation." (R. 15.) "There [was] no indication that a minimal increase in demands would cause such

decompensation," and she "has not shown an inability to function outside a highly supportive living arrangement." (*Id*.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff is a younger individual (45 years old on the date of the alleged onset) with a high school education. (R. 27.) The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except the claimant cannot lift or carry more than 10 to 15 pounds . . . must be given the option to alternate between sitting and standing every hour . . . cannot perform overhead reaching . . . can occasionally perform stooping, crouching, kneeling, crawling and climbing of stairs and ramps, but she cannot climb ladders or scaffolds . . . cannot

perform balancing or be exposed to unprotected heights, dangerous machinery or extremes of cold . . . can perform simple work tasks, with no interaction with the public and brief and superficial interaction with coworkers . . . [with] supportive and non-confrontational [supervision], [and] with occasional oversight. Changes in the workplace should be gradually introduced.

(R. 16.)

The ALJ found that plaintiff could not perform any of her past relevant work. (R. 27.)

### 5.  Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the

Commissioner must show that the claimant—in light of her RFC, age, education, and

work experience—is capable of performing other work that exists in substantial numbers

in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R.

§ 404.1520(c)(1); § 416.920(g). The regulations provide:

If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . .  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1).  If the claimant is not capable of performing

such other work, the Commissioner must find the claimant is disabled.  20 C.F.R.

§ 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist in the national economy that plaintiff, considering her RFC and her vocational factors, could perform.  The VE testified that an individual with plaintiff's limitations and vocational factors could perform the jobs of inserter, garment folder, and inspector. (R. 28.) These jobs exist in significant numbers in the national economy. (*Id*.) The ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and was not disabled. (*Id*.)

## B.  MS. HUNTER'S CLAIMS

### 1. Vocational Expert's Testimony

Plaintiff's first argument is that the "testimony of the VE was not substantial evidence" upon which the ALJ could rely "because the ALJ *in his* [sic] *hypothetical* did not consider [plaintiff's] numerous accidents, the severity of her pain, and her headaches." (Doc. 10 at 14) (emphasis added). Plaintiff is not arguing that the ALJ herself actually failed to consider plaintiff's accidents, pain, and headaches in her opinion. (*See* r. 17-18 ("she injured her neck in 2006 . . . felt pain in her neck in [sic] March 2, 2009"); r. 16 ("The claimant states that she has severe neck pain, bad headaches, fatigue and constant pain.").) Rather, plaintiff argues that the law requires the ALJ to "pose a hypothetical question to the vocational expert which *comprehensively describes* the claimant's impairments." (Doc. 10 at 14) (emphasis added).

Plaintiff's argument confuses the functions of the ALJ and the VE. The ALJ must

consider all of plaintiff's impairments and symptoms and how they affect plaintiff's ability to function. From this consideration, which, in this case, took eleven single-spaced pages, the ALJ constructs a residual functional capacity of about a paragraph. *See* 20 C.F.R. § 404.1545(a)(4) ("When we assess your residual functional capacity, we will consider your ability to meet the physical, mental, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of this section."). The ALJ does not consult a VE to get a second opinion on whether an accident might cause certain symptoms, or how those symptoms might affect the claimant's physical or mental abilities. *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (citing 20 C.F.R. § 404.1560). As its name makes apparent, the vocational expert tells the ALJ about jobs—specifically, the physical and mental requirements of certain jobs and how available those jobs are. *See* 20 C.F.R. § 404.1560(b)(2). What is needed in the hypothetical is what the claimant might and might not be able to do (e.g., bend over), not the immediate or remote sources of those limitations (e.g., back pain; an accident).

This confusion leads plaintiff to misread the case she cites. In *McMillian v. Astrue*, 2012 U.S. Dist. Lexis 143660 (S.D. Ala. 2012), the problem with the hypothetical was that it "neither explicitly *nor implicitly accounted for* plaintiff's moderate limitations/impairments in concentration, persistence, and pace . . . ." *Id.* at *28 (emphasis added). It left out something that the plaintiff apparently could not do: concentrate. If plaintiff's argument here was correct, the court in *McMillian* would have attacked the

12

ALJ's failure to mention the plaintiff's alleged depression in the hypothetical.

### 2. RFC to Perform Light Work

Plaintiff's second argument is that the RFC the ALJ assigned her was not supported by substantial evidence because "[t]here is no analysis of the medical records including Claimant's neck condition or her lumbar condition." (Doc. 10 at 19.) Those conditions, plaintiff asserts, are "her two herniated discs, one at C6-7 and the other in the lumbar spine." (*Id*. at 18.) Plaintiff does not cite the medical records to which she refers in her argument, but earlier in her brief she cites two MRIs: a July 17, 2006 MRI showing "left paracentral and preformainal [sic] protrusion at C6-7 producing left lateral recess stenosis and moderate left neural foraminal stenosis," (*id*. at 13) (citing r. 307), and a September 30, 2008 MRI showing "lumbar spine: broad-based disc herniation laterally at L5-S1," (doc. 10 at 14) (citing r. 563).

The ALJ discusses and analyzes the effect of both MRIs. The ALJ noted that plaintiff "had a minimally invasive diskectomy from a posterior foraminal approach in July 2006 ([citing, in part, r. 307, 'Exhibit 4F'])," but following a December 2006 surgery she improved and returned to full-time employment until 2009. (R. 17.) The ALJ also noted "an MRI of the claimant's lumbar spine on September 30, 2008 showed normal alignment, vertebral body height and marrow signal intensities, with no significant disc desiccation changes. There was broad-based herniation at one level, but no significant central canal stenosis or neural foraminal stenosis ([citing r. 563, 'Exhibit 10F'])." (R.

13.) The ALJ found this herniation insignificant in light of the fact that "most [subsequent] physical examinations have found that the claimant could perform many work-related activities." (R. 22.) The ALJ cites work releases by Dr. Bowen and Dr. Wilson, who reported"no significant new structural finding," (R. 18), and the FCE of plaintiff, (R. 591-600), which found that "claimant could perform light to medium work." (R. 22.)

### 3. Opinions of Dr. Michael Kendrick, Plaintiff's Treating Physician, and Jo Spradling, Plaintiff's Vocational Expert

Plaintiff's third argument is that "the ALJ failed to state specific reasons for rejecting the opinions of the treating physician [Dr. Kendrick] and Vocational Professional [Jo Spradling]." (Doc. 10 at 20.) The vocational professional plaintiff employed met with plaintiff, reviewed her medical evidence, and concluded that "she is 100% vocationally disabled from any form of sustained gainful employment." (R. 825.) However, as the ALJ noted in rejecting it, Spradling's opinion is internally inconsistent, as it is based in part on medication that plaintiff was no longer taking as of the date of the hearing, and the opinion finds only a 15% "whole person impairment," despite Spradling's conclusion that plaintiff is 100% disabled. (R. 26, 185.) Additionally, Spradling is not a physician.[5] (R. 26.) The ALJ is not required to give any weight to an

---

[5]The ALJ also stated that Spradling was not a licensed mental health expert, but that may be incorrect. Jo Spradling signs as an LPC. (R. 825.) Licensed professional counselors "provide mental health and substance abuse care" and have graduate degrees.  AMERICAN COUNSELING ASSOCIATION, *Who Are Licensed Professional Counselors*,

opinion from a non-physician that simply states a final conclusion on plaintiff's disability. 20 C.F.R. § 404.1527(d).

Plaintiff is correct that the opinion of her treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ accepted almost all of Dr. Kendrick's restrictions, including those on sitting and standing, but did not accept his full restriction on bending because the ALJ found that plaintiff does not[6] "have ongoing care for a history of low back or objective tests showing extensive low back problems." (R. 26.) Therefore, the ALJ only limited plaintiff in her RFC to "occasional stooping, crouching, and kneeling." (*Id.*)

There are three issues: (1) whether the ALJ's statement is factually accurate, (2) whether a lack of ongoing care or a lack of objective medical evidence can constitute "good cause," and if not, (3) whether Dr. Kendrick's opinion was entitled to controlling weight.

The ALJ's statement is not factually flawless. Plaintiff has a history of care for and complaints of arthritis or pain in her lower back. (R. 696: July 2007; r. 692: Sept. 2007; r. 654: April 2009; r. 773: Aug. 2010; r. 768: Jan. 2011.) She has also had problems with

---

http://www.counseling.org/PublicPolicy/WhoAreLPCs.pdf at 1.

[6]The opinion states ". . . the claimant does have ongoing . . ." but the only way the sentence makes sense is to assume that "not" was left out in a typographical error.

her sciatic[7] nerve. (R. 153: listing sciatica as a medical condition in disability report; r. 43: at the hearing; r. 771: Jan. 2011.) Objective medical evidence might not have shown *extensive* low back problems, but it has shown "broad-based disc herniation laterally at L5-S1 [low back]." (R. 563: Sept. 2008). However, to support a total ban on bending, one would expect extensive problems to exist. The ALJ is correct: plaintiff's primary complaints have not focused on her lower back, and she does not have ongoing care targeting that area.

"'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Because the ALJ pointed out a lack of evidence to support a total ban on bending, the ALJ had good cause to slightly modify the treating physician's opinion in determining plaintiff's RFC. Because good cause existed to make a finding contrary to that of plaintiff's treating physician, Dr. Kendrick's opinion was not entitled to controlling weight.

### 4. Effects of Medication

Plaintiff's fourth argument is that the ALJ "failed to discuss" the effects that plaintiff's heavy medications have on her ability to work. (Doc. 10 at 24.) Plaintiff cites

---

[7]"When you have sciatica, you have pain, weakness, numbness, or tingling. It can start in the lower back and extend down your leg to your calf, foot, or even your toes." *Sciatica*, MEDLINEPLUS: A SERVICE OF THE NAT'L INST. OF HEALTH, http://www.nlm.nih.gov/medlineplus/sciatica.html (last visited Sept. 8, 2014).

the hearing, in which plaintiff testified that her medications give her a rash on her arms, make her drowsy, and make her depressed. (R. 52.) The ALJ did discuss these side effects in the opinion: "The medication causes a rash on her arms, possible depression and drowsiness . . . she lies down 3-4 times during the day for 30 minutes to 1 hour because of the drowsiness." (R. 17.) Nevertheless, the ALJ did not find plaintiff completely credible because she reported having no side effects to her medications on her last reported visit to her treating physician. (R. 25, citing r. 896; *see also* r. 890.)

### 5. Credibility of Plaintiff's Testimony

Plaintiff's final argument is that the ALJ improperly discredited plaintiff's testimony concerning the severity of her pain. (Doc. 10 at 25.) SSR 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929[8]: "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p.

---

[8]Apparently the Eleventh Circuit considers the standard set out in the regulations and the standard in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same language [as *Holt*] regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*]."). Because SSR 96-7p offers an in-depth explanation of the regulations and is more recent than *Holt*, the court looks to it for guidance.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 17.)

If the ALJ finds that the plaintiff's case survives the first step, then

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ analyzed plaintiff's objective medical evidence for five pages, (R. 17-22), and concluded that "[t]he severity of pain and other symptoms alleged by the claimant is not supported by objective findings in the medical evidence of record," (R. 22). Plaintiff does not contest this finding. Rather, she argues that "[t]he pain standard does not require objective proof of the pain itself." (Doc. 10 at 25) (citing *Elam v. R.R Ret. Bd.*, 921 F2d 1210, 1215 (11th Cir. 1991)). She argues that the ALJ can rely on her subjective testimony of the severity of her pain, (*id*. at 25), and that "[t]he 'reasons' stated by the ALJ are not adequate reasons for finding Claimant not credible," (*id*. at 28).

While it is true that the ALJ must consider plaintiff's subjective testimony in determining the severity of her pain, the ALJ is also required to consider the objective medical evidence. "In evaluating the intensity and persistence of your symptoms, including pain, we will consider *all* of the available evidence . . . ." 20 C.F.R. § 404.1529(a).  When an ALJ finds, as the ALJ did here, that the objective medical evidence is inconsistent with a claimant's subjective testimony about the severity of her pain, the claimant's testimony  must outweigh the objective medical evidence.

The ALJ puts forward three bases for discrediting plaintiff's testimony: her daily activities, the objective medical evidence, and her own inconsistent statements.The ALJ found that plaintiff's "high level of ability to perform daily activities appears to be inconsistent with the claimant's allegations of disability." The ALJ found plaintiff's testimony at the hearing, in which she claimed that "she did not do much housework or participate in many activities," (R. 24), inconsistent with her function report, which found that she

> prepares simple meals, feeds her pets, does laundry, watches television, listens to the radio, does some reading, visits with family and takes care of her personal needs . . . shops for groceries, attends doctor's appointments, goes to the drug store and attends church . . . 'drives as necessary' . . . pay[s] bills, count[s] change, and use[s] a checkbook and money orders, with occasional help.

(R. 25).

A few "activities" can be dealt with categorically, right away: watching TV and listening to the radio are in no way inconsistent with a claim of disability. Obviously, "an

applicant need not be completely bedridden or unable to perform any household chores to be considered disabled," *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989), but a claimant would have to be not merely bedridden, but comatose, deaf, or blind to be unable to listen to the radio or watch television. *See also Bennet v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) (citing other cases for this proposition). The ability to count change is also unremarkable.

To truly evaluate whether the rest of plaintiff's daily activities exhibit a "high level of ability," and thus discredit plaintiff's testimony,[9] more than merely the categories of plaintiff's activities is needed. Plaintiff's meal preparation consists of this: she "may fix a real meal once a week," but she mostly prepares sandwiches, cereal, and microwaves hot dogs. (R. 165.) Scooping out some dog food and filling up the water bowl for her small dogs is also not a "high level" activity. (R. 164.) Doing laundry, which she stays behind on, is apparently the only household chore she does. (R. 165.) The only evidence of plaintiff's apparent activity of "some reading" is that she wears "glasses when [she] read[s]." (R. 169.) Saying that plaintiff "visits with family" implies that plaintiff goes to their homes to make social calls, but plaintiff has made clear that that is not the case: "I can't . . . go to friends and family gatherings," (R.168), she reported that she has problems getting along with family because it's hard for her to socialize, she does not spend time

---

[9]She testified, for instance, that she wouldn't be able to work because five to seven times a month her pain level is at a nine, causing her to lie down all day, and the rest of the time it is around a three. (R. 50-51.)

with others, (R. 167), and "mostly all [she] do[es] is stay home," (R. 168). She checked the box that says that she has no problem taking care of her personal needs, but then adds that she doesn't take care of herself like she used to, and it's rare that she's able to put on makeup. (R. 164-165.) As far as shopping for groceries and attending church goes, she reports only that she can go to the store with someone else *if* she is having a better day, which is maybe once a month, (R. 166), and can go to the 11:00 Sunday church service *if* her morning is going well, (R. 167-168). These statements are not inconsistent with her testimony, in which she acknowledged that she has good and bad days, (R. 50-51), and do not show a "high level of ability."

The defendant cannot seriously suggest that attending doctor's appointments and going to the drug store ("when she gets someone to take her," (R. 174))—what might be her only sources of treatment and relief—are activities indicating that she is not disabled, but rather that she has a "high level of ability."

That leaves the following daily activities: "'drives as necessary' . . . pay[s] bills . . . and use[s] a checkbook and money orders, with occasional help." (R. 25.) Plaintiff apparently "drives as necessary," but her sister drives her "most of the time." (R. 48). In her function report, plaintiff states that she cannot drive and take her pain medications, (R. 166), in the hearing she stated that she "feared driving," (r. 48), and the function report completed by her husband states that she doesn't "trust herself driving," (r. 174). It is not inconsistent that people on rare occasions do what they fear. As for bill-paying, she

21

gets "mixed up sometimes." (R. 166.)

Plaintiff was right to question the ALJ's suggestion about her daily activities. Generic daily activities such as "shopping" and "cooking" are not activities that an ALJ can simply list to discredit a claimant's testimony of pain. *See Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272-73 (M.D. Fla. 2012). A claimant's activities must be actually inconsistent with what the claimant alleges. Plaintiff's testimony with regard to her daily activities is consistent with her complaints of disabling symptoms and limitations.

The ALJ did not rely on plaintiff's daily activities alone, however, to discredit her complaints. The ALJ also found that the objective medical evidence and her physician's recommendations were inconsistent with her testimony and that her testimony was inconsistent with other statements she has made. (R. 25.) For example, the ALJ notes that plaintiff wrote that she was not experiencing side effects to her medication on her last reported visit to her treating physician, (R. 890), but claimed her medication had a number of side effects at the hearing, (R. 48-49). (R. 25.) The ALJ also noted that although plaintiff claimed to be able to stand for thirty minutes and sit for one hour at a time, (R. 45), her physicians only restricted her from sitting or standing for more than six hours, (R. 847). (R. 25.) Therefore, to the extent the ALJ discredited plaintiff's subjective testimony about her pain, the ALJ relied on substantial evidence.

Having carefully considered plaintiff's arguments, and upon review of the record

22

as a whole, the court finds that the ALJ's determination that plaintiff is capable of performing a limited range of light work is supported by substantial evidence. Therefore, the decision of the Commissioner denying plaintiff's claim for a period of disability and DIB is due to be affirmed.

## C. MOTION TO REMAND

Plaintiff amended her disability onset date to the day after her previous application was denied, February 11, 2012, and another ALJ awarded her benefits in a decision dated January 17, 2014. (Doc. 13 at 1.) She now claims that the ALJ's decision denying her previous application, the one at issue in this case, is due to be remanded because "[a] subsequent favorable decision on the day after the denial in this case substantially undermines the first denial." (Doc. 13 at 2.)

Plaintiff attaches the new favorable decision but otherwise does not include any new evidence with her Motion. Therefore, plaintiff has not shown that any new evidence is material. Alone, the ALJ's opinion finding plaintiff disabled as of February 11, 2012 is not material to the previous ALJ's decision that plaintiff was not disabled before that date. *See Enix v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 861, 863 (11th Cir. 2012) (stating that in an analysis of whether to remand under sentence 6, "new evidence must relate to the period on or before the date of the [ALJ's] decision"). A finding of not disabled on plaintiff's previous application is entirely consistent with plaintiff's own claim in her subsequent application that the onset of her disability occurred on February 11, 2012–the

day after the first ALJ's decision. Nothing in the opinion of the ALJ awarding benefits to plaintiff specifically undermines a previous finding that before her onset date, she was not disabled. Therefore, plaintiff's Motion to Remand is due to be denied.

## **CONCLUSION**

For the reasons set forth above, Ms. Hunter's Motion to Remand Pursuant to Sentence 6, (doc. 13), is due to be denied, and the decision of the Commissioner is due to be affirmed.  An Order denying the Motion to Remand, (doc. 13), and affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 8th day of September, 2014.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE